UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TASHAWNA JANAY SEANARA H.,

Plaintiff,

v.

CASE NO. 1:25-cv-00542 (JGW)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

J. Gregory Wehrman, U.S. Magistrate Judge,

**MEMORANDUM-DECISION and ORDER**

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Docs. 8, 13), as well as Plaintiff's Reply (Doc. 14). Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 8) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 13) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I. RELEVANT BACKGROUND

### A. Procedural Background

On July 6, 2016, Plaintiff filed an application for supplemental security income, alleging an onset date of September 1, 2015.[1] (Tr. 1823; 191; 286-91.) The application

[1] There was a previously filed application for supplemental security income, which the ALJ decided to reopen and consider with this later filed application:

was denied initially on August 18, 2016. (Tr. 191-97.) Thereafter, Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). (Tr. 223-25.) Plaintiff appeared and testified at a hearing on November 29, 2018 before ALJ Jonathan Baird. (Tr. 147-79). On January 18, 2019, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled. (Tr. 9-30.) The Appeals Council denied the request for review, (Tr. 1-6), and Plaintiff timely appealed to federal district court.

The district court remanded the matter for further development of the record because mental health treatment records from 2018, which were testified to at the hearing, were not included in the record. (*See* Tr. 1144-53.) On remand, Plaintiff appeared with counsel and testified at a hearing held before ALJ Stephen Cordovani on July 19, 2022. (Tr. 1059-1113.) The ALJ issued another unfavorable decision on February 1, 2023. (Tr. 1031-58.)

Following an appeal to this Court, the matter was again remanded, this time by stipulation of the parties. (*See* Tr. 1958-59.) The Appeals Council, in its remand order, directed the ALJ to conduct further evaluation and analysis of the treating doctor opinions. (Tr. 1963-64.) Plaintiff again appeared with counsel and testified at a hearing held before

---

> The claimant is alleging disability since September 1, 2015. As discussed at the July 19, 2022 hearing, the claimant filed a prior Title XVI application on September 21, 2015, which was disapproved on January 27, 2016 (Ex. 2A; Ex. 4A, p. 2). The current application was protectively filed on July 6, 2016 (Ex. 3A), approximately 5 months later. The alleged onset date in the current application, September 1, 2015 (Ex. 3A), falls within the period adjudicated in the prior application, thus, filing of the current application constitutes an "implied" request for reopening (HALLEX I-2-9-10(B)), and because the current application was filed within 12 months of the prior application, it can be reopened for any reason (20 CFR 416.1488). I have reopened the prior application, therefore, the relevant time period for this decision is September 21, 2015 through the present.

(Tr. 1823.)

ALJ Cordovani on February 19, 2025. (Tr. 1865-96.) On March 13, 2025, the ALJ issued an unfavorable decision. (Tr. 1820-56.) Plaintiff's appeal to this Court followed.

### B. Factual Background

Plaintiff was born on July 15, 1995, (Tr. 191), and has a special-education high school diploma, (Tr. 401). Plaintiff alleged several initial impairments in support of her disability claim, including lower back injury, left leg injury, learning disability, depression, and anxiety. (Tr. 192)

#### 1. Hearing Testimony

During the hearing before the ALJ on February 19, 2025, Plaintiff's counsel identified the alleged severe impairments to include a learning disability, borderline intellectual functioning, anxiety disorder, depressive disorder, loss of lordosis of the cervical spine, bulging discs of the lumbar spine at multiple levels, with radiculopathy and obesity. (Tr. 1869.)

Plaintiff testified that she was unable to work because of her physical and mental limitations. She explained that she could not stand for very long. (Tr. 1883.) She elaborated that she was unable to move around or even get dressed on her own. (Tr. 1884.) She could only stand for a minute before she would need to sit, and after sitting for three to four minutes, she would need to get up. (*Id.*) She indicated that she could not lift much, noting that her small, fifteen-pound dog was "a little bit too heavy" for her. (Tr. 1885.) She described that she had difficulty getting up from a seated or laying down position and required help. (*Id.*) She could not climb stairs. (*Id.*) Plaintiff noted that she experienced headaches, and that the doctors do not know the cause of her headaches. (Tr. 1882.)

Mentally, she explained that she had been depressed because she was unable to do anything for herself. (Tr. 1886.) She noted that she could not work, do anything with her dog or her family, and she also sometimes experienced bad anxiety if there were a lot of people. (*Id.*) She described that she experienced panic attacks. (*Id.*)

Plaintiff indicated that she could not cook or otherwise prepare meals for herself. (Tr. 1887.) She also could not clean the dishes, vacuum, or sweep. (*Id.*) She noted that she was unable to do these things because she could not stand too long or move around without getting dizzy and needing to sit down. (*Id.*) She further explained that her mother did laundry for her. (Tr. 1888.) She no longer has friends, but her family visits and socializes with her. (*Id.*) She described that she required assistance to bathe and get dressed. (*Id.*) Plaintiff testified that she does not have a driver's license, and she relies on either her boyfriend or a medical cab to get to her medical appointments. (Tr. 1871.) She will sometimes go food shopping with her boyfriend, but generally, he goes alone because she is in too much pain. (Tr. 1871-72.)

**2. Medical Opinion Evidence**

Upon initial review, the agency reviewers found Plaintiff's medically determinable impairments (both physical and mental) to be nonsevere. (Tr. 185, 187.)

Two treating physicians provided medical opinions in this case. Dr. Huckell, an orthopedic surgeon, treated Plaintiff for her cervical and lumbar spine conditions following her two motor vehicle accidents. In August and October 2016, he opined that Plaintiff's

work restrictions included no repetitive bending, twisting, rotation of the spine and no lifting greater than fifteen pounds.[2] (*See* Tr. 916, 1770.)

In November 2016, Dr. Cameron, Plaintiff's primary care physician, saw Plaintiff for a follow up to her motor vehicle accidents. (Tr. 904-08.) This appeared to be the first visit for follow up from her motor vehicle accidents, and it was noted that the office called during the visit for clarification and "her attorney told her to come to [Dr. Cameron] today to see if she can get '100% disability' as Dr. Huckell is not writing for." (Tr. 905.) Dr. Cameron concluded that her condition was "[u]ncontrolled but improved." (Tr. 904.) She noted that her "opinion would not supercede that of Dr. Huckell's expert opinion. I am unable to find evidence of that she would be fully disabled base[d] on today's available information." (*Id.*)

There are also opinions from two consultative examiners. In December 2015, Dr. Miller examined Plaintiff. (Tr. 791-95.) Following her examination, Dr. Miller concluded that Plaintiff had "mild limitations to heavy, [sic] lifting, bending, and carrying" and should avoid "dust and tobacco exposure." (Tr. 793.)

In October 2024, Dr. Liu examined Plaintiff. (Tr. 2455-68.) He found that Plaintiff had moderate limitations: "walking, standing, sitting and climbing stairs;" "squatting, kneeling, crawling, balancing, bending and crouching;" "lifting and carrying;" "pushing and pulling;" and "reaching overhead with both hands, reaching forward with both hands and reaching generally with both hands." (Tr. 2461.) He further opined that Plaintiff should "avoid heights and operating heavy machinery; activities which require heavy exertion."

[2] Plaintiff again saw Dr. Huckell in November 2016, when he concluded that Plaintiff had a permanent partial disability resulting from the motor vehicle accidents, and he further noted that "[w]ork restrictions may be given if necessary." (*See* Tr. 1777.)

(*Id.*) Finally, he found that Plaintiff "may experience interrupted scheduled activities due to the headache[s]." (*Id.*) Further, Dr. Liu completed a Medical Source Statement of Ability to Do Work-Related Activities, finding Plaintiff could occasionally lift and carry between 11 and 20 pounds and frequently lift up to 10 pounds; sit and stand thirty minutes at a time for a total of 2 hours in a workday; walk for one hour at a time and four hours in a workday; frequently reach overhand and all other with both hands; frequently push/pull with both hands; continuously handle and finger with both hands; never climb ladder or scaffolds, crouch, or crawl; occasionally climb stairs and ramps; occasionally kneel, frequently balance and stoop; never be around vibrations; occasionally be exposed to unprotected heights, moving mechanical parts, extreme cold, or operate a motor vehicle; continuously be exposed to humidity, dust, odors, fumes and extreme heat. (Tr. 2463-67.) He opined that she needed a quiet work environment. (Tr. 2467.)

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law.

1. The claimant has not engaged in substantial gainful activity since September 21 2015, the application date (20 CFR 416.971 *et seq*.). (Tr. 1826.)

2. The claimant has the following severe impairments: loss of lordosis of the cervical spine; disc bulging of the lumbar spine at multiple levels with radiculopathy; and obesity (20 CFR 416.920(c)). (Tr. 1826.)

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). (Tr. 1833.)

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except lifting and carrying is limited to no greater than 15 pounds. The claimant is limited to occasional ladders, ropes, and scaffolds; occasional

ramps and stairs; frequent stoop, kneel, crouch, and crawl; and frequent reach, handle, and finger. (Tr. 1834.)

5. The claimant has no past relevant work (20 CFR 416.965). (Tr. 1843.)

6. The claimant was born on July 15, 1995 and was 20 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963). (Tr. 1843.)

7. The claimant has at least a high school education (20 CFR 416.964). (Tr. 1843.)

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968). (Tr. 1843.)

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a). (Tr. 1844.)

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 6, 2016, the date the application was filed (20 CFR 416.920(g)). (Tr. 1845.)

## II. LEGAL STANDARD

### A. Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d

Cir. 1988). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

**B. Standard to Determine Disability**

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is

unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

## III. ANALYSIS

Plaintiff's challenges focus on the ALJ's evaluation of Dr. Liu's opinion. Plaintiff argues that the ALJ erred by rejecting the more limiting aspects of Dr. Liu's opinion. (Doc. 8-1 at 16.) She also asserts that the ALJ failed to reconcile the RFC with the portions of Dr. Liu's opinion he assigned great weight. (*Id.*) Plaintiff contends remand is necessary to correct these errors.

The ALJ began his analysis by summarizing Dr. Liu's opinion:

> I have considered the October 25, 2024 opinion of consultative internal medicine examiner, Hongbiao Liu, M.D., that the claimant has moderate limitations walking, standing, sitting and climbing stairs. Claimant has moderate limitations with squatting, kneeling, crawling, balancing, bending, and crouching. Claimant has moderate limitations for lifting and carrying. Claimant has moderate limitations for pushing and pulling. Claimant has moderate limitations reaching overhead with both hands, reaching forward with both hands, and reaching laterally with both hands. Claimant should avoid heights and operating heavy machinery; activities which require heavy exertion. She may experience interrupted scheduled activities due to the headache. Dr. Liu also completed a medical source statement in which he opined the claimant can lift/carry occasionally up to 20 pounds and frequently up to 10 pounds, sit 30 minutes, stand 30 minutes, and walk 1 hour at one time each without interruption, sit 2 hours, stand 2 hours, and walk 4 hours total in an 8-hour workday, frequently reach overhead and in all other directions bilaterally, frequently push/pull bilaterally, never climb ladders or scaffolds, crouch, or crawl, occasionally climb ramps and stairs, occasionally kneel, frequently balance and stoop, never work in vibration, occasionally work around unprotected heights, work around moving mechanical parts, operate a motor vehicle, and work in extreme cold, and she can work in a quiet noise environment (Ex. 33F).

(Tr. 1841-42.)

The ALJ next assigned the opinion "some weight," noting that "Dr. Liu is not a treating provider but he is an acceptable medical source who had the benefit of examining the claimant in-person. Dr. Liu also has knowledge of Social Security's program and policies." (Tr. 1842.) The ALJ then considered carefully the conclusions set forth in Dr. Liu's opinion, awarding certain portions "little weight:"

> Dr. Liu's opinion that the claimant has a moderate limitation in sitting, should avoid heights and operating heavy machinery, may experience interrupted scheduled activities due to headache, can sit 30 minutes, stand 30 minutes, and walk 1 hour at one time each without interruption, sit 2 hours, stand 2 hours, and walk 4 hours total in an 8-hour workday, frequently reach overhead and in all other directions bilaterally, frequently push/pull bilaterally, occasionally kneel, frequently balance, never work in vibration, occasionally work around unprotected heights, work around moving mechanical parts, operate a motor vehicle, and work in extreme cold, and she can work in a quiet noise environment is given little weight. Although some of these limitations are supported by Dr. Liu's examination of the claimant showing she walked on her heels and toes with moderate difficulty, could squat only 25%, had difficulty getting up and out of the chair, had difficulty getting on and off the exam table, and had reduced cervical spine, lumbar spine, and hip range of motion, they are not consistent with the opinions of Dr. Miller or Dr. Huckell (Exs. 12F, 15F, 25F) or the examinations which did show reduced range of motion with positive straight leg raising at times, but also showed normal gaits, the ability to walk and stand on the heels and toes without balance or coordination deficits, full strength, negative straight leg raising tests, and normal neurological findings (Exs. 2F, 6F-7F, 12F, 20F-21F, 23F-24F). The opinion that the claimant may experience interrupted scheduled activities due to headache is not supported by Dr. Liu's completely normal neurological examination of the claimant and is not consistent with the claimant's sparse neurology treatment or the neurology records which contain completely normal examinations (Ex. 30F; Hearing Testimony).

(*Id.*)

Next, he assigned "great weight" to other portions of Dr. Liu's opinion:

> However, the remaining portions of Dr. Liu's opinion are given great weight. They are supported by Dr. Liu's examination of the claimant that did show she walked on her heels and toes with moderate difficulty, could squat only 25%, had difficulty getting up and out of the chair, had difficulty getting on and off the exam table, and had reduced cervical spine, lumbar spine,

> shoulder, and hip range of motion, but also showed a normal gait and stance, no assistive device use, no need for assistance when changing for the exam, clear lungs, no spinal abnormalities, negative straight leg raising, no joint issues, no cyanosis, clubbing, or edema in the extremities, no muscle atrophy, normal deep tendon reflexes, no sensory deficits, 5/5 upper and lower extremity strength, intact hand and finger dexterity, 5/5 grip strength bilaterally, and full elbow, wrist, knee, and ankle range of motion. These portions are generally consistent with the opinions of Dr. Miller and Dr. Huckell (Exs. 12F, 15F, 25F) and the claimant's reported work activity throughout the relevant period (Exs. 28D-29D, 34D-36D, 37E; Hearing Testimony). However, I find that because Dr. Huckell had a longstanding treatment relationship with the claimant, his opinion limiting her lifting to 15 pounds is given greater weight. I have adopted that limitation in the residual functional capacity above.

(Tr. 1842-43.)

The Court recognizes that Plaintiff's claim was filed on July 6, 2016, and so at that time, the SSA regulations provided that, unless the ALJ afforded controlling weight to a treating source's medical opinion, the ALJ was required to consider and weigh all medical opinions of record, whether those opinions were from acceptable medical sources, other medical sources or non-medical sources, with consideration of the following factors for determining the appropriate weight to afford such opinions: (1) the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence in support of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) other factors brought to the SSA's attention that tend to support or contradict the opinion. *Saxon v. Astrue*, 781 F. Supp. 2d 92, 103-04 (N.D.N.Y. 2011); *see also* 20 C.F.R. § 404.1527 (c). The factors to be considered in evaluating opinions from non-treating medical sources are the same as those for assessing treating sources, except that consideration of the treatment relationship is replaced with consideration of whether the non-treating source examined the plaintiff. *White v. Saul*, 414 F. Supp. 3d 377, 383 (W.D.N.Y. 2019). So long as the

ALJ's rationale is clear, however, the ALJ need not address each factor individually. *See Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

Genuine conflicts in the medical evidence are for the ALJ to resolve. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in a decision, the ALJ is entitled to weigh all the evidence available to make a residual functional capacity finding that is consistent with the record as a whole. *Trepanier v. Comm'r of Soc. Sec.*, 752 F. App'x 75, 79 (2d Cir. 2018); *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ need not reconcile every conflict in the record but must set forth the crucial factors in his determination with sufficient specificity to enable a reviewing court to decide whether the determination is supported by substantial evidence. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). While the ALJ is not obligated to explicitly reconcile every conflicting shred of medical evidence, the ALJ cannot selectively choose evidence in the record to support the ALJ's conclusions. *Gecevic v. Sec. of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995). A plaintiff is entitled to understand why the ALJ chose to disregard portions of medical opinions that were beneficial to his application for benefits. *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp.2d 288, 297 (W.D.N.Y. 2006). Thus, when an ALJ chooses to adopt only portions of a medical opinion, the ALJ must explain his decision to reject the remaining portions. *Tanya Y. v. Comm'r of Soc. Sec.*, 20-CV-712, 2022 WL 1115458, at *2 (W.D.N.Y. Apr. 14, 2022).

Having reviewed the record and Dr. Liu's opinion, the Court finds ALJ Cordovani's evaluation of Dr. Liu's opinion to be consistent with the applicable regulations and supported by substantial evidence. The ALJ first acknowledged that Dr. Liu was not a

treating provider but then noted that he constituted an acceptable medical source who had examined Plaintiff. (Tr. 1842.) He next recognized that Dr. Liu had knowledge of the Social Security's program and policy. (*Id.*)

The ALJ then carefully analyzed each of the limitations Dr. Liu assigned and evaluated each for supportability and consistency. (Tr. 1842-43.) For those opinions he did not award great weight, he acknowledged that some were supported by Dr. Liu's examination, specifically that Plaintiff "walked on her heels and toes with moderate difficulty, could squat only 25%, had difficulty getting up and out of the chair, had difficulty getting on and off the exam table, and had reduced cervical spine, lumbar spine, and hip range of motion." (Tr. 1842.) However, the ALJ noted that, even for those opinions supported by Dr. Liu's examination, they were not consistent with the opinions of the other experts or the objective medical testing. (*See id.*) (recognizing that the limitations were "not consistent with the opinions of Dr. Miller or Dr. Huckell or the examinations which did show reduced range of motion with positive straight leg raising at times, but also showed normal gaits, the ability to walk and stand on the heels and toes without balance or coordination deficits, full strength, negative straight leg raising tests, and normal neurological findings.")

For those opinions the ALJ did credit, he expressly noted that the limitations were supported by the findings of Dr. Liu's examination. (*Id.*) Further, these restrictions were also "generally consistent" with the opinions of Dr. Miller and Dr. Huckell, as well as Plaintiff's reported work activity. (*See id.*) Moreover, the ALJ recognized a conflict between Dr. Liu's opinion and Dr. Huckell's opinion regarding the amount of weight

Plaintiff could lift. (*See* Tr. 1843.) The ALJ properly resolved this conflict in favor of Plaintiff's treating provider's restriction. (*See id.*)

Plaintiff attempts to cast doubt on the ALJ's evaluation by arguing that the ALJ wrongly found Dr. Liu's opinion inconsistent with those of Dr. Miller and Dr. Huckell, whose opinions were inconsistent with each other. (Doc. 8-1 at 18-19.) The Court is not persuaded. Importantly, the opinions of Dr. Miller and Dr. Huckell are not inconsistent with each other. Dr. Miller imposed "mild limitations to heavy, [sic] lifting, bending, and carrying" and should avoid "dust and tobacco exposure." (Tr. 793.) Dr. Huckell restricted Plaintiff from "repetitive bending, twisting, rotation of the spine and no lifting greater than fifteen pounds." (*See* Tr. 916, 1770.) These opinions thus restrict Plaintiff's ability to lift and perform postural movements to some degree, but they do not exclude them entirely. Thus, these opinions were inconsistent with Dr. Liu's more significant restrictions. Furthermore, the ALJ never found the opinions of Dr. Huckell and Dr. Miller to be identical, nor did they need to be. The Court finds no error in the ALJ's finding that Dr. Liu's opinion was inconsistent with other opinions in the record.

The Court also finds no error in the ALJ's reliance on exhibits to support his consistency analysis. In this section of his decision, the ALJ identified the exhibit numbers containing objective examination findings. (*See* Tr. 1842.) However, the Court notes that the ALJ provided page citations containing objective examination findings reflecting grossly normal musculoskeletal clinical findings earlier in his decision. (*See* Tr. 1837) (citing Tr. 560, 624, 668, 670, 673-74, 888, 911-12, 957, 1432-33, 1449, 1458-59, 1573, 1627, 1747.)

The Court similarly rejects Plaintiff's theory that the ALJ improperly cherry-picked or mischaracterized the record. Indeed, the ALJ expressly considered the findings Plaintiff contends supports her position:

> The reduced light range of exertion with additional postural and manipulative limitations is further supported and accommodates the claimant's cervical and lumbar spine disorder resulting from her remote motor vehicle accidents. Records show she exhibited limited and painful range of motion upon initial treatment (2F/1, 61). The May 2014 cervical MRI showed no obvious disc herniations or significant central or foraminal stenosis but straightening of the lordosis (2F/61). The correlating lumbar MRI showed narrowing of the central canal with L4-5 disc bulge and L5-S1 shallow disc herniation/protrusion abutting the thecal sac with mild bilateral foraminal stenosis and L3-S1 facet arthrosis (2F/61). The October 2014 EMG/NCS studies were consistent with moderate chronic L5 and S1 radiculopathy on the left (2F/67-68).
>
> However, objective findings show grossly normal musculoskeletal clinical findings on exams. Thee [sic] claimant exhibits a normal gait with the ability to walk and stand on heels and toes without balance or coordination deficits (2F/71, 6F/2, 15F/8, 32, 20F/3, 20). Additionally, while she has decreased functional range of motion and tenderness, she has full strength (5/5) of the bilateral upper and lower extremities (2F/71, 7F/39, 41, 44, 45, 15F/8, 20F/29). While she had a positive straight leg raise shortly after her 2014 motor vehicle accident (2F/71), subsequent records show negative straight leg raises (15F/28, 32, 17F/11, 20F/30). She also reported to medical providers that she was able to run with her dog, approximately 5 miles (15F/54, 56). Subsequent records show she reports no muscle pain or neurological deficits (18F/38, 23F/61, 80, 24F/76) and full active range of motion (21F/111, 23F/47, 24F/77). Additionally, she is treated conservatively with TENS unit and chiropractic manipulation with noted improvement (6F/1, referring to 2F, 8F, 10F, 14F, 25F/3). She also engaged in pain management (17F).

(*See* Tr. 1837.)

While Plaintiff may identify certain facts that she contends supports a finding of disability, at most, she identifies a conflict in the evidence. It is well settled that conflicts within the evidence are to be resolved by the ALJ, *see Veino*, 312 F.3d at 588, and once resolved by the ALJ, they cannot be overturned by this Court unless "a reasonable

factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin, Com'r*, 683 F.3d 443, 448 (2d 2012) (emphasis in original) (citation omitted). Thus, the Court is plainly prohibited from re-weighing the evidence, which is what Plaintiff requests. *See Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."). Simply put, Plaintiff's disagreement with the ALJ's resolution of conflicting evidence is not grounds for remand. *See David C. v. Comm'r of Soc. Sec.*, No. 6:23-cv-06510-CJS, 2024 WL 4347151, *18 (W.D.N.Y. Sept. 30, 2024) (citing *Lisa M. o/b/o J.S. v. Comm'r of Soc. Sec.*, No. 1:21-cv-00292 EAW, 2023 WL 3943997, at *3 (W.D.N.Y. June 12, 2023) ("A disagreement with how the ALJ weighed the evidence is not a valid basis to challenge the ALJ's determination.").

Plaintiff also takes issue with the ALJ's rejection of Dr. Liu's opinion that Plaintiff may experience interruptions to scheduled activities due to headaches, arguing that the ALJ's reasoning is not supported by substantial evidence. The Court disagrees. The ALJ found this restriction to be inconsistent with the record, specifically, Plaintiff's normal neurological findings generally and even during Dr. Liu's examination, as well as Plaintiff's sparse neurology treatment. (Tr. 1842.) Indeed, Plaintiff acknowledged her ability to manage her headaches with Tylenol and at least a two year period during which she did not experience a syncopal event. (Tr. 2289-91.) Plaintiff does not identify any evidence in the record to show that her headaches functionally limit her as Dr. Liu suggested, nor evidence to show that she could not engage in work consistent with the ALJ's RFC. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (noting that a plaintiff has the burden to prove a more restrictive RFC). As such, her challenge fails.

Finally, Plaintiff argues that the ALJ failed to reconcile the RFC with the portions of Dr. Liu's opinion to which he gave great weight. (Doc. 8-1 at 23-24.) More specifically, Plaintiff appears to argue that Dr. Liu opined that Plaintiff had moderate limitations in reaching overhead with both hands, reaching forward with both hands, and reaching laterally with both hands, but the ALJ assigned Plaintiff to frequent reaching, handling, and fingering while other restrictions rated by Dr. Liu as "moderately limited" were restricted to "occasionally" by the ALJ. (*See id.* at 27.) The Court notes that Plaintiff cites no authority to support her contention that a "moderate" limitation translates to only occasional, rather than frequent, performance, and Defendant has identified several cases that suggest the opposite. *See Mohsin A. v. Comm'r of Soc. Sec.*, No. 1:20-cv-01502-DB, 2022 WL 94557, at *8 (W.D.N.Y. Jan. 10, 2022) (finding that an RFC for frequent reaching, handling, and fingering with the right upper extremity are consistent with consultative examiner's opinion that claimant had moderate limitations in "reaching, pushing, and pulling with the right upper extremity"); *Katherine R. v. Comm'r of Soc. Sec.*, No. 1:20-cv-01055-MJR, 2021 WL 5596416, at *5 (W.D.N.Y. Nov. 30, 2021) (noting that "courts within this Circuit have consistently held that mild and moderate limitations, such as those assessed by Dr. Liu, are consistent with an RFC for light work") (collecting cases).

Nonetheless, it is dispositive that Dr. Liu himself identified that Plaintiff was capable of frequent reaching, handling, and fingering in the accompanying medical source statement. (*See* Tr. 2465.) Thus, the Court finds no error on this point.[3] As noted, an

[3] Defendant points out that the ALJ's decision lists the frequent reaching limitation in the paragraph addressing the portions of Dr. Liu's opinion to which he assigned "little weight." (*See* Doc. 13-1 at 10.) However, the Court agrees that given the RFC's inclusion of this limitation, its inclusion here was a typographical error. (*See id.*)

ALJ's decision need not precisely mirror any expert's opinion. *See Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (recognizing that "the ALJ bears 'the final responsibility' for making RFC determinations" and so the RFC conclusion "need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence.").

Accordingly, the Court finds no error in the ALJ's analysis of Dr. Liu's opinion. While Plaintiff may disagree with his conclusions, the ALJ is charged with resolving conflicting evidence. *See Veino*, 312 F.3d at 588. The ALJ carefully detailed Plaintiff's treatment history, concluding that it limited Plaintiff to the RFC he formulated. The Court concludes that the ALJ did not err in his analysis. Plaintiff has simply not shown that "the record requires a reasonable factfinder to reach a different result." *See Spottswood v. Kijakazi*, No. 23-54-cv, 2024 WL 89635, at *3 (2d Cir. Jan. 9, 2024) (summary order).

## IV. CONCLUSION

Based on the foregoing, the Court finds no basis for remand. **ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 8) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 13) is **GRANTED**.

The Clerk of Court is **DIRECTED** to close this case.

Dated: November 18, 2026
Rochester, New York

J. Gregory Wehrman J.G.W.
HON. J. Gregory Wehrman
United States Magistrate Judge